AMERICAN WHIP Co. v. HAMPDEN WHIP Co. and others.

*(Circuit Court, D. Massachusetts.* ———, 1880.)

1. RE-ISSUE No. 5,651, for an improvement in the modes of constructing whip-stocks, *held valid* as to the first claim, *held anticipated* as to the second claim.

In Equity.

Patent No. 132,909 was granted David C. Hull, November 12, 1872, on an application said to have been filed March 9, 1871, for an improvement in modes of constructing whip-stocks. In his specification he said: "In the common way heretofore practiced for making a whip-stock of pieces of rattan and a metallic load, the pieces of wood were arranged around the load-piece, with their butts even, or about so, with each other, in consequence of which the part at the butt of the stock held or grasped by the chuck of the turning machine could not be turned thereby, but had to be subsequently reduced by other means." He then described the mode of making his improved whip-stock, showing, with the assistance of his drawings, substantially this: that he inserted a plug or backing of wood in the butt of the whip-stock, at the part which is grasped by the chuck of the lathe, in place of the metallic load-piece, so that when the stock is taken out of the machine this part can be sawed off without obstruction from the iron or leaden load-piece, instead of being planed or whittled down to suit the taper of the whip. He adds: "I

am aware that in turning an article it has been customary to use a blank longer than the article, and afterwards to remove the surplus at each or either end of the article. Such, however, constitutes no part of my invention, but is only incident to it in the matter of reduction of it or [? to] the whip-stock. I therefore make no claim to such a process of turning an article from a blank longer than the article, and subsequently removing the surplus at either or each end of the article." The claim was "the method of constructing a whip-stock by making a stump-shod on the end of the stock by the insertion of a backing or plug within the surrounding rattans, for the purpose of allowing the butt of the whip to be entirely finished by turning, and the superfluous material to be removed by the saw, all in the manner described."

Re-issue No. 5,651 was granted the patentee, November 11, 1873, in which the description of the manufacture was like that in the original patent, but a statement and a claim were· added. The former is: "The extension of the rattan strips, D, rearward beyond the load-piece, with or without the plug or prism, is a matter of my invention. Although the extension alone, without the load-piece, makes a stump-shod which can be used in holding the stock in the chuck of the turning machine, the addition of the plug makes the stump-shod stronger, and not liable to cripple or give way under the action of the machine." The additional claim, which was the first of the re-issue, was for a whip-stock with the parts arranged as described, showing the rattan strips surrounding the load-piece, and extended rearward beyond it, substantially as described. The second claim, like the single claim of the original patent, though somewhat differently expressed, was for the arrangement when the plug was used.

There was evidence tending to show that the invention claimed first in the re-issue was made in 1865, when about one gross of whips were made and sold; and the second part, where the plug is used, was made in 1870, within two years before the application for the original patent. There was much conflicting evidence upon the state of the art before 1865 and before 1870.

*T. L. Livermore,* for complainants.

*B. F. Thurston,* for defendants.

LOWELL, C. J. As I construe the patent, it is for an improvement in the manufacture of that class of whips which are turned in a lathe, and the whip-stock claimed is the stock just before it goes into the lathe, or an improvement in the manufacture at that part of its progress. This last point is very important, because one Herrick is proved, without contradiction, to have made whip-stocks, with a wooden plug or backing, before 1870. Herrick did not finish his whip-stocks in a lathe, though they were fit for that mode of operation, and, if the second claim of the re-issue is for a turned whip-stock, it might, perhaps, be sustained. But the claim itself declares that the arrangement is "in order that the butt of the stock may be held and finished by a turning machine," and a statement precisely like this is made in an earlier part of the specification. That claim must, therefore, be held to have been anticipated by Herrick, and to be void.

The invention mentioned in the first claim was made in 1865, and was not, in my opinion, in public use or on sale more than two years before March 9, 1871, by reason of the manufacture at Charlestown; not on sale, because neither the invention, nor anything which embodies or would be likely to suggest it, is found in the completed whip; and not in public use, because the invention was tested in the only way in which it could fairly be tested, by making a few at the factory where the patentee was employed.

The law since 1870, as I understand it, has avoided a patent, if any one has publicly used or has sold the same invention, by whomsoever discovered, for more than two years before the patent was applied for. The Herrick whip was certainly made before 1870, but I do not think it is proved to have been made before March 9, 1869. The precise date is left in much doubt.

I do not find that this invention was anticipated. Spencer's evidence as to certain kinds of whips, of which he gives reproductions, is seriously contradicted by workmen referred to by him, as well as by others; and none of the whips, if they were

made, were of the class of whips which were or could be turned in a lathe. If some of them had a backing of wood below the iron, it was not, in my opinion, the equivalent of that of the patent.

Whether the invention of the first claim was patentable, in view of the state of the art admitted in the specification, is certainly a nice question. Hull disclaims the process of turning an article so as to leave a "stump-shod" or piece to be cut off. This was done in turning the legs of chairs and other articles. I suppose he means that he disclaims any broad or general application of this mode of manufacture. As applied to a whip-stock with the peculiar benefit which it gives, and the exact application which it requires, I think, upon the whole, it may be supported as being something more than the new application of an old method. The invention does not consist either in making a "stump-shod" or in sawing it off, but in combining the metallic load-piece of a whip-stock with the stump-shod in such a way that the stump-shod may be sawed off.

I find the first claim of the patent to be valid, and to have been infringed.

Decree for the complainants.